## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RESPIBABY LTD AND ISRAEL AMIRAV, M.D.,

        Plaintiffs,

        - against -

NOSTRUM TECHNOLOGIES, LLC AND
INSPIRX INC.

        Defendants.

Case No. 18-cv-9896

**Jury Trial Demanded**

## COMPLAINT

Plaintiffs RespiBaby Ltd and Israel Amirav, M.D. ("RespiBaby," "Dr. Amirav," and collectively, "Plaintiffs"), for their complaint against Nostrum Technologies, LLC ("Nostrum") and InspiRX Inc. ( "InspiRX" and collectively with Nostrum, "Defendants"), allege on personal knowledge as to their own conduct and on information and belief as to the conduct of others, as follows:

### NATURE OF THE CLAIMS

1.      After years of clinical studies and painstaking research, Plaintiff Dr. Israel Amirav, a practicing physician, invented a highly innovative medical device — the SootherMask — that improves the administration of inhalable medication to infants and young children.

2.      On November 11, 2013, Dr. Amirav and his co-inventor Dr. Michael Newhouse, entered into a technology agreement ("Letter Agreement") with defendant Nostrum, a New Jersey biomedical company, whereby they assigned the valuable SootherMask technology to Nostrum. In return for the patent assignment, Nostrum agreed to pay various licensing fees to

RespiBaby for a minimum of ten years (*i.e.* up through the year 2023) that were based on a percentage of sales and certain guaranteed minimum payments.

3.      Although nearly five years have passed since RespiBaby assigned the SootherMask technology to [Nostrum] and Plaintiffs are owed approximately $919,000 in payments, to date, they have only received a small fraction of what they are owed.[1]  Although RespiBaby has made repeated demands to be paid and the Defendants have acknowledged their debt to Plaintiffs, they have nevertheless failed to pay RespiBaby.

4.      Despite their refusal to pay, Nostrum, and its successor, InspiRX continue to use the Soothermask technology to grow and expand their business.  In fact, the SootherMask is one of the Defendants' most important intellectual property assets, and is presently being sold in the US, Canada and Western Europe.   The Defendants are apparently under the very mistaken belief that they are entitled to continue using the SootherMask technology without compensating RespiBaby.

5.      Faced with the very real prospect that the Defendants will never pay their debt to RespiBaby, RespiBaby is compelled to file this lawsuit and seek the Court's assistance to

---

[1] The instant lawsuit only seeks to recover the various payments which are due to RespiBaby, not Ontario, because Ontario, and its founder, Dr. Newhouse, have refused to join the suit.  As set forth in more detail below, Dr. Newhouse sits on InspiRX's advisory board, serves as the Chief Medical Officer of InspiRX, and provides consulting services to Nostrum, which makes his refusal to join this suit non-surprising.

recover the past and future payments to which they are entitled and to remedy the other

damages that Nostrum has inflicted on them.[2]

## PARTIES

**Plaintiffs**

6.      Plaintiff RespiBaby Ltd is an Israeli corporation with offices located in Rosh

Pina, Israel.  Founded in 2009, RespiBaby develops and designs inhalation devices that are

intended for use in a variety of medical applications for infants and children with asthma and

other respiratory problems.  The SootherMask is RespiBaby's most commercially successful

product.

7.      Plaintiff Israel Amirav, M.D. is the founder and Chief Executive Officer of

RespiBaby.  Specializing in pediatric respirology, Dr. Amirav has been practicing medicine for

more than thirty-six years and is currently employed as Associate Professor of Pediatrics at the

Stollery Children's Hospital at the University of Alberta in Edmonton, Canada.  Throughout Dr.

Amirav's career, he has conducted numerous studies related to childhood asthma and the

diagnosis of pneumonia in developing countries for which he has published articles and

received various honors and recognitions.[3]

---

[2] Respibaby originally commenced this action in New York Supreme Court, New York County (Index No. 156498/2017) by filing a motion for summary judgment in lieu of complaint pursuant to CPLR § 3213 on July 19, 2017 based on the Defendants' admission that, as of that time, they owed RespiBaby $440,635. In opposing that motion, the Defendants did not deny that they owed money but rather claimed that service was not perfected because the documents were served on an InspiRx employee who was not authorized to accept service, and a variety of other technical defenses.  Rather than perfecting service in the state court action, Plaintiffs are refiling in federal court, and are seeking the entire sum of money owed, rather than the smaller amount that they could obtain summary judgment on.

[3] Dr. Amirav's invention of the SootherMask was featured on a Canadian television news channel on June 23, 2016 which can be viewed at https://www.facebook.com/StolleryChildrensHospital/videos/1049685785084852.

**Defendants Nostrum and InspiRX**

8.      Defendant Nostrum Technologies, LLC[4] is a New Jersey limited liability company with its principal place of business at 1370 Hamilton Street in Somerset, New Jersey.  According to Defendants, Nostrum was dissolved in 2014.

9.      A biomedical company which at one point had several hundred employees, a manufacturing facility in Kansas City, Kansas and a laboratory in India, Nostrum was engaged in the "formulation and commercialization of specialty pharmaceutical products and controlled-release, orally administered, branded and generic drugs."

10.     Defendant InspiRX is the successor in interest to Nostrum.  Like Nostrum, InspiRX maintains its principal place of business at 1370 Hamilton Street, Somerset, New Jersey 08873.  InspiRX is a New Jersey research and development company with a primary focus on infants and toddlers and aerosolized drug delivery.

11.     Michael Amato has served as the Executive Vice President of Nostrum and the Chief Executive Officer of InspiRX.  Upon information and belief, following Nostrum's dissolution in 2014, Nostrum's respiratory therapeutic programs were transferred to InspiRX.

12.     Nostrum and InspiRX have the same leadership team, the same personnel, the same assets, the same marketing plans and strategies, the same customers and constitute the same business, regardless of name.  Thus, with respect to the instant claim and liability, InspiRX is the successor in interest to Nostrum.

---

[4] Notwithstanding the Defendants' assertion that Nostrum was allegedly dissolved, as of the filing of the instant complaint, Nostrum still maintains a website which is located at http://www.nostrumpharma.com/management.aspx/ and there is no indication from that site that Nostrum Technologies is no longer active.   According to the "Management" page on Nostrum's website, Ronnie Toddywala, PhD, MBA, currently serves as Nostrum's CEO and the "Overpage" states that Nostrum Technologies is presently "engaged in the discovery and commercialization of specialty diagnostics for colorectal cancer and inhalation devices."

## JURISDICTION AND VENUE

13.    This Court has subject-matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332, as the Plaintiffs reside in different states or countries from the Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.    This Court has personal jurisdiction and venue is proper based on the forum selection clause in the Letter Agreement between Respibaby and Nostrum, which provides that: (1) any legal action between the parties "shall be brought in state or Federal Courts in the state of New York" and (2) any dispute under the Agreement will be governed by New York law.  As the successor in interest to the Letter Agreement, InspiRX is also bound by the forum selection clause.

## STATEMENT OF FACTS

### A.  Dr. Amirav Conceives the SootherMask Technology and is Issued U.S. Patent 6,470, 882 Along with His Co-Inventor Dr. Michael Newhouse

15.    During his many years of treating infants and young children suffering from asthma and other respiratory diseases, Dr. Amirav recognized that providing treatment by aerosols was very problematic and demanding.  Mothers would constantly complain to Dr. Amirav that they were unable to give their children the prescribed aerosol medications because the crying babies would remove the mask.

16.    For several years, Dr. Amirav searched for a better alternative.  He initially developed a hood-like device which received FDA approval.  However, for various reasons, this product did not make it to market.

17.    Finally, after conducting additional research and clinical studies, Dr. Amirav conceived of the SootherMask, a gentle and innovative approach which would incorporate the

infant's own pacifier into the inhalation mask, thus overcoming the common resistance of infants to the use of aerosol face masks.

18.   After conceiving the idea for the SootherMask, Dr. Amirav realized that, in order to turn his idea into an actual product, he would need to team up with another physician who had general experience with aerosolized drug delivery.  To that end, Dr. Amirav turned to his friend and colleague Dr. Michael Newhouse, a Canadian physician who has expertise with inhaled therapies, and asked whether he would be interested in working with him.  Dr. Newhouse agreed and together they began working on developing the SootherMask.

19. On September 9, 1997, Drs. Amirav and Newhouse filed a patent application for the SootherMask with the United States Patent and Trademark Office and on October 9, 2002, they were issued U.S. Patent No. 6,470,882 (the '882 Patent).  On the '882 patent, Drs. Amirav and Newhouse are listed as co-inventors.  Over the course of the next several years, Drs. Amirav and Newhouse searched for a suitable company to market the SootherMask.

20. In 2008, Dr. Newhouse introduced Dr. Amirav to Nostrum to discuss the possibility of licensing the SootherMask to Nostrum.  Following various discussions and negotiations, RespiBaby and Dr. Newhouse entered into an Exclusive License Agreement (the "2009 Agreement") with Nostrum.

21.      Pursuant to the 2009 Agreement, in exchange for developing and granting Nostrum the exclusive rights to sell the SootherMask, Nostrum agreed to pay RespiBaby an initial payment of $65,000, together with a series of milestone and royalty payments to RespiBaby and Dr. Newhouse which were based on net sales.

22.      Drs. Amirav and Newhouse spent the next four to five years conducting additional research and development with the goal of bringing the SootherMask to market. Although Dr. Newhouse contributed to these efforts, most of this work was conducted in Israel

under Dr. Amirav's direct supervision.   Later, in or around 2012, the SootherMask received

FDA approval, which was another important milestone.

23.      In the meantime, by October 2013, Nostrum and its U.S. distributor Lupin

Pharmaceuticals ("Lupin") recognized that there was potentially a large market share for the

SootherMask and that sales of the SootherMask in the U.S. and elsewhere could be very

profitable. The Defendants further recognized that if they were to acquire the SootherMask

intellectual property, it would no doubt help them improve their own product line and realize

their goal of becoming market leader in respiratory research and development.

24.      To that end, Nostrum asked Drs. Amirav and Newhouse whether they

would consider assigning the '882 Patent to Nostrum.  On November 11, 2013, Drs. Amirav

and Newhouse entered into the Letter Agreement with Nostrum, which assigned the '882

Patent to Nostrum, in exchange for a series of fixed and variable payments (the "Letter

Agreement".)  The Letter Agreement superseded the 2009 Agreement.  Dr. Amirav signed the

Agreement on behalf of RespiBaby and Dr. Newhouse signed the Agreement on behalf of

43180 Ontario.[5]   Michael Amato, Nostrum's then Executive Vice-President, signed the Letter

Agreement on behalf of Nostrum.

## B.  Payment Terms in the Letter Agreement

25.      The Letter Agreement contains several unambiguous and unconditional

promises by Nostrum to make a series of individual payments to RespiBaby over a minimum

ten-year period.

---

[5] Dr. Newhouse is a Canadian citizen who presently resides in Ontario, Canada.  As noted above, in addition to
founding a Canadian entity called 431680 Ontario, Inc., Dr. Newhouse currently serves as the Chief Medical
Officer of Nostrum/InspiRX.

26.      ***First***, under Section 1 of the Letter Agreement, Nostrum promised to pay RespiBaby the outstanding balance of [REDACTED] that Nostrum owed RespiBaby pursuant to the 2009 Agreement, within thirty (30) days of execution of the Letter Agreement.[6]

27.      ***Second***, Section 6.3 provides that, beginning on the date of FDA approval, *i.e.,* July 1, 2012, Nostrum was required to make the following annual minimum payments to RespiBaby:

- For the period from the first anniversary (July 1, 2013) to the second anniversary (July 2014), Nostrum was obligated to pay RespiBaby the sum of [REDACTED]

- For the second anniversary (the period ending June 30, 2015), Nostrum was obligated to pay RespiBaby the sum of [REDACTED]

- On and **after** the third anniversary, Nostrum was obligated to pay RespiBaby [REDACTED] per year.

28.      ***Third***, under Section 6.5, Nostrum promised to pay RespiBaby the sum of [REDACTED] in four quarterly installments [REDACTED] on the following dates:  April 15, 2014, July 15, 2014, October 15, 2014, and January 15, 2014.

29.      ***Fourth,*** pursuant to Section 6.1, Nostrum promised to make royalty payments amounting to [REDACTED] of Net Sales to Respibaby and Ontario, which was to be split equally between Respibaby and Ontario.

30.      Section 7.1 of the Letter Agreement further provides that Nostrum's payment obligations set forth in Section 6 of the Agreement **"shall continue in effect until the later of** [REDACTED] [REDACTED] (Bold emphasis added).

31.      Thus, at a minimum, Nostrum's payment obligations to RespiBaby extends

---

[6] Because the Letter Agreement has a confidentiality provision, Plaintiffs have redacted certain key terms from the publicly filed copy of the Complaint, but will provide an unredacted copy to the Court.  Plaintiffs are also prepared to provide the Court with a copy of the Letter Agreement.

until **REDACTED**

32.     Despite the unambiguous payment terms in the Letter Agreement, to date, the Plaintiffs have only received $319,241[7] from the Defendants.

33.     Factoring in the sum of $67,000 that the Defendants owed RespiBaby under the 2009 Agreement and the annual minimum payments that were due and owing to RespiBaby between July 2014 and July 2018, as of August 1, 2018, Defendants owe RespiBaby the total sum of $919,814.   By the year 2023, the Defendants will owe RespiBaby at least $2 million dollars.

**C.  Other Salient Provisions of the Letter Agreement**

34.     In addition to its payment obligations to RespiBaby, under the Letter Agreement, Nostrum made several other key promises to RespiBaby.

35.     For instance, under Section 5.4, Nostrum promised that "it shall not assign U.S. Patent No. No. 6,470,882 to any third party, **without the prior written consent** of RespiBaby and 431680 Ontario." (Bold Emphasis added).

36.     Pursuant to Section 6.4, Nostrum promised to "regularly notify RespiBaby upon any significant agreement or sale executed for the SootherMask Products."

37.     Under Section 6.4, Nostrum likewise promised that, upon prior written notice, RespiBaby would have the right to inspect Nostrum's books and records to verify the accuracy of the payments made to RespiBaby and 431680 Ontario.

38.     Lastly, Section 6.4 states that "[i]n case a Respibaby audit reveals an underpayment of the Net Sales Payments due to Respibaby and 431680 Ontario" in excess of

---

[7] One payment of $100,000 was made in June 2015, in partial satisfaction of the obligation specified in Section 6.5 of the Letter Agreement.  A second payment of $100,000 was made in October 2016, in partial satisfaction of the outstanding balance of $540,635 which was then owed pursuant to Sections 1 and 6.3 of the Letter Agreement.

3%, Nostrum shall "add monthly interest of 1% to such Net Sales Payments from the time of the shortfall, and in addition, will reimburse Respibaby for all audit-related expenses."

### D. Nostrum and InspiRX Use the '882 Patent to Grow and Expand Their Business

39.     Since Nostrum acquired the SootherMask technology nearly five years ago, it is now one of the most important assets in the Defendants' intellectual property portfolio.  The Defendants leverage the value of the SootherMask patent and use it to attract funding and grow the business by listing it on its website and other sales and marketing materials.

40.     The Defendants have also earned substantial amounts of money from the SootherMask.   Indeed, in 2014, Nostrum received $1.25 million dollars pursuant to a distribution agreement with Lupin, which is currently distributing the SootherMask in the United States and Canada.   Moreover, efforts are currently underway to begin selling the SootherMask in the Netherlands, England and Israel.

41.     Nostrum and InspiRX are also marketing a number of other different products which relate to the administration of atomized medications.

42.   As Nostrum acknowledged in a March 10, 2015 letter Mr. Amato sent to Dr. Amirav, RespiBaby has fully honored its contractual obligations under the Letter Agreement. In that letter, Mr. Amato assured Dr. Amirav that "[i]n accordance with [Nostrum's] obligation . . . "all royalties agreed upon in previous agreements would be paid as they came due."

### E. In Breach of the Letter Agreement, Nostrum Fails to Make the Required Payments to RespiBaby That Were Due and Owing as of July 1, 2018

43.     Yet, the Defendants never made good on that promise.   In fact, over the past two years, Dr. Amirav and his counsel have made repeated demands on Nostrum to recover the outstanding debt.   Significantly, in response to those demands, Nostrum has never *once* denied that it is contractually obligated to pay RespiBaby.   On the contrary, Nostrum has admitted its

indebtedness to RespiBaby but simply claimed that the Company is financially unable to pay RespiBaby.

44.    In March 2016, Dr. Amirav wrote to Nostrum's Executive Vice President Michael T. Amato, stating that Nostrum owed RespiBaby $340,635, and that the outstanding debt would grow to $540,635 on July 1, 2016.

45.    The following week, Mr. Amato responded by thanking Drs. Amirav and Newhouse for their continued patience.  He also confirmed that Defendants had every intention of paying RespiBaby by stating "[t]he dollar amount which you previously sent to me are as we agreed and I certainly accept them."

46.    On October 13, 2016, after approximately six more months had passed and RespiBaby still had not been paid, the Plaintiffs sent another letter demanding the $540,635 RespiBaby was owed at that time.   In response, Defendants did not dispute the debt to RespiBaby, but claimed that it was unable to make any payment ". . . at the present time."

47.    In an October 27, 2016 e-mail Mr. Amato sent in response to yet a further demand for payment, Mr. Amato once again acknowledged Nostrum's debt to RespiBaby.  In order to persuade Dr. Amirav not to take legal action against Nostrum, Mr. Amato made the following proposal.

48.    First, Mr. Amato promised that by November 1, 2016, he would send Dr. Amirav a stock certificate from InspiRX indicating the number of shares that had been issued to Dr. Amirav.  Second, he promised to present Dr. Amirav with a "repayment schedule" within one month.  Third, Mr. Amato agreed to send Dr. Amirav a wire transfer in the amount of $100,00.

49.    Although following that e-mail, Nostrum did make a payment in the amount of $100,000, Nostrum never presented Dr. Amirav with a "repayment schedule."  After receiving the partial payment from Nostrum in the amount of $100,000, Dr. Amirav wrote to Mr. Amato:

"I want to make it clear that the $100,000 you sent me was only a partial payment and that Nostrum still owes me the sum of $440,635."

50.    Mr. Amato responded on November 11, 2016 and once again acknowledged that Nostrum owes RespiBaby $440,635.  Specifically, Mr. Amato wrote: "Thanks for the email and we recognize that we owe you additional monies and have every intention on paying the outstanding balance."

**F.    The Defendants Have Denied Plaintiffs the Right to Inspect Nostrum's Books and Records in Breach of Section 6.4**

51.    In response to the Defendants' claim that they are unable to satisfy their payment obligations to RespiBaby, Dr. Amirav attempted to exercise his right to inspect Nostrum's books-and-records under Section of the 6.4 of the Letter Agreement so that he could ascertain the financial condition of Nostrum.  RespiBaby's need for this information was and remains especially acute because although the Defendants' claim that they have no money to pay RespiBaby, it is Dr. Amirav's understanding that they have earned substantial amounts of money from sales of the SootherMask and the company is financially sound.

52.    Although Nostrum initially told RespiBaby that it would agree to an audit, Nostrum inexplicably reneged on that promise as well, and thus, to date, Dr. Amirav has been denied the right to inspect Nostrum's books and records.  While, as noted above, the Defendants did make a partial payment to RespiBaby in the amount of $100,000 in October 2016 and at various points have indicated that they would be willing to enter into a repayment schedule, they have never followed through with those promises.

53.    Finally, after several months of stringing the Plaintiffs along, Dr. Amirav ultimately came to the realization that the Defendants have no intention of honoring their payment obligations —— either with respect to the payments that are currently outstanding or

those payments that will come due over the next five years —— and would only do so if forced by the Court.

**F.  Nostrum 's Breach of Other Key Provisions of the Letter Agreement**

54.    Nostrum has further breached the Letter Agreement by improperly assigning the '882 Patent to InspiRX in flagrant violation of Section 5.4 of the Letter Agreement which provides that Nostrum was not permitted to assign the '882 patent, **without first receiving prior written consent** from RespiBaby and 431680 Ontario.

55.    At no time did Dr. Amirav ever give Nostrum permission to assign the '882 patent to InspiRX.

**G.  As Successor in Interest to Nostrum, InspiRX is Responsible for the Debts to Plaintiffs Created by the Letter Agreement**

56.    Although InspiRX was not a signatory to the Letter Agreement, because it is the successor in interest to Nostrum, and specifically assumed responsibility for the Letter Agreement, it is now responsible for the debts to RespiBaby created by that agreement.

57.    Indeed, InspiRX has admitted to Dr. Amirav that it assumed Nostrum's responsibilities to RespiBaby under the Letter Agreement and that following Nostrum's dissolution in 2014, the Plaintiffs have "dealt primarily or exclusively with InspiRX" (and not Nostrum).

58.    Thus, for example, when Mr. Amato corresponded with Dr. Amirav about the debt owed to RespiBaby, he did so on InspiRX stationary and from his InspiRX email account which contained his InspiRX signature block.   In fact, in one such email, Mr. Amato admitted **"that we recognize that we owe you additional monies and have every intention on paying the outstanding balance." [8]**

---

[8] Mr. Amato further acknowledged Nostrum's debt to Plaintiffs in a draft July 2014 letter which Nostrum's patent counsel prepared in response to Plaintiffs' concerns over potential

59.    Moreover, InspiRX is a "mere continuation" of Nostrum.  Nostrum and InspiRX operate in the same line of business which relates to the research, development, and marketing of respiratory therapies.

60.    There is also a significant overlap between the management and executive teams for Nostrum and InspiRX.  To cite but just a few examples, Michael Amato, who formerly served as Executive Vice President of Nostrum is the current CEO of InspiRX and serves on InspiRX's Board of Directors.  Nirmal Mulye, PhD, was the founder and President of Nostrum and presently serves as Chairman of InspiRX's Board of Directors.  Dr. Ronnie Toddywala, Ph.D. currently serves as Chief Executive Officer of Nostrum and is also Chief Technology of InspiRX.  Dr. Newhouse was a scientific advisor for Nostrum and currently serves as Chief Medical Officer of InspiRX.

61.    Further, when Mr. Amato signed the Letter Agreement, the email address he added to the Letter Agreement was an InspirRx email address.

62.    Finally, both Nostrum and InspiRX share the same physical office which is located at 1370 Hamilton Street in Somerset, New Jersey.

63.    Accordingly, as the successor in interest to Nostrum, InspiRX is now responsible for those debts to RespiBaby.

---

tax liabilities in Israel as a result of the Letter Agreement.  Tellingly, in that draft letter, which Mr. Amato wrote in his capacity as CEO of InspiRX and on InspiRX letterhead, he confirmed that Nostrum **"has not fulfilled its financial obligations under the Agreement"** and "has every intention of fulfilling all of its obligations required by the Agreement on or before January 1, 2015."

## COUNT I
## BREACH OF CONTRACT

64.   RespiBaby repeats, re-alleges, and incorporates by reference each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

65.   RespiBaby and Nostrum are parties to the Letter Agreement, which was, and is, a valid and enforceable contract.  InspiRx is the successor-in-interest to Respibaby.

66.   RespiBaby has performed its obligations under the Letter Agreement.

67.   The Defendants breached the Letter Agreement by, among other things, failing to satisfy their payment obligations to the Plaintiffs and improperly assigning the SootherMask patent to InspiRX.

68.   The breaches were neither justified nor excused.

69.   As a direct and proximate result of the Defendants' breach, RespiBaby has been damaged in an amount to be determined at trial but in no event less than $2,000,000 plus interest, costs and fees.

## COUNT II

## UNJUST ENRICHMENT
## (As Against Defendant InspiRX)

70.   RespiBaby repeats, realleges, and incorporates by reference each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

71.   RespiBaby conferred a significant benefit on Nostrum by assigning Nostrum the valuable SootherMask technology.

72.   InspiRX retained the benefit of RespiBaby's efforts by, among other things, making money from sales of the SootherMask technology.

73.     Despite InspiRX's retention of the benefits of RespiBaby's efforts, InspiRX has failed to compensate RespiBaby.  For InspiRX to retain the benefits conferred on it by RespiBaby without providing the agreed-upon compensation is unjust.

74.     As a result of InspiRX's conduct, RespiBaby has been damaged in an amount to be determined at trial, but in no event less than $2,000,000, plus interest, costs and fees.

## COUNT III

## CLAIM FOR AN ACCOUNTING

75.     RespiBaby repeats, realleges, and incorporates by reference each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

76.     Pursuant to Paragraph 6.4 of the Letter Agreement, upon prior written notice, Respibaby is entitled to inspect Nostrum's books and records to verify the accuracy of the payments made to RespiBaby and 431680 Ontario.

77.     Dr. Amirav requested an opportunity to view Nostrum's books and records in order to verify those statements.

78.     The Defendants denied that request and have barred RespiBaby from having any access to Nostrum's books and records.

79.     RespiBaby has no adequate remedy at law.

80.     For the foregoing reasons, RespiBaby is entitled to an order granting a full accounting of Nostrum and InspiRX.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs RespiBaby and Dr. Amirav respectfully request that this Court issue relief and judgment against the Defendants as follows:

A.     Awarding RespiBaby an amount to be proven at trial, but not less than $2,000,000.

B.      Awarding RespiBaby attorneys' fees and costs of this action.

C.      Awarding RespiBaby pre- and post-judgment interest.

D.      Awarding RespiBaby such other, further, and different relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues properly triable by the jury.

Dated:  October 25, 2018

By:      /s/ Samuel Kadosh

**Reed Smith LLP**
Samuel Kadosh
599 Lexington Avenue
New York, NY  10022-7650
Telephone: +1 212 521 5400
Facsimile: +1 212 521 5450

*Attorneys for RespiBaby Ltd. and Israel Amirav, M.D*